FILED

1   HOWARD Z. ROSEN, State Bar No. 54442
    hzrosen@posner-rosen.com
2   JASON C. MARSILI, State Bar No. 233980
    jmarsili@posner-rosen.com
3   BRIANNA M. PRIMOZIC, State Bar No. 274397
    bprimozic@posner-rosen.com
4
5   POSNER & ROSEN LLP
    3600 Wilshire Blvd., Suite 1800
    Los Angeles, CA 90010-2679
6
7   Telephone No. (213) 389-6050
    Facsimile No. (213) 389-0663
8
    Attorneys for Plaintiff
9   MICHAEL J. HENRY

13 NOV 27 PM 3: 05

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

12                    WESTERN DIVISION

13   CV 13 - 8821 DMG (MRWx)

14   MICHAEL J. HENRY, an individual,   )  CASE NO.
                                        )
15              Plaintiff,              )  **COMPLAINT FOR DAMAGES**
                                        )
16        v.                            )  1.  FMLA Interference
                                        )  2.  Disability Discrimination
17   PRO*ACT, LLC, a Delaware Limited   )  3.  Failure to Accommodate
     Liability Company, and HARVEST     )  4.  Failure to Engage in Interactive
18   SENSATIONS, LLC, a Delaware        )      Process
     Limited Liability Company,         )  5.  Age Discrimination
19                                      )  6.  Wrongful Termination in Violation
                Defendants.             )      of Public Policy
20                                      )
                                        )  **DEMAND FOR JURY TRIAL**
21

22

23

24        COMES NOW Plaintiff MICHAEL J. HENRY against Defendants, and each

25   of them, and alleges the following claims for relief:

26

27

28

## JURISDICTION

1.    Jurisdiction of this Court is invoked pursuant to Section 101 *et seq.* of the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq.* Subject matter jurisdiction over Plaintiff's FMLA claim is proper pursuant to 28 U.S.C. § 1331.

2.    As set forth in paragraphs 12 through 36, inclusive, Plaintiff's related state law claims arise out of a common nucleus of operative facts and form part of the same case or controversy such that Plaintiff would be expected to try all his claims in a single judicial proceeding.  Accordingly, supplemental jurisdiction over Plaintiff's related state law claims is proper pursuant to 28 U.S.C. § 1367(a).

3.    The matter in controversy exceeds the sum of $75,000.  As set forth in paragraphs 5 through 7, inclusive, Plaintiff and Defendants are off different citizenship.  Consequently, subject matter jurisdiction over all of Plaintiff's claims for relief is also proper pursuant to 28 U.S.C. § 1332.

## VENUE

4.    Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391(b)(2) as a substantial part of the events giving rise to Plaintiff's claims occurred in Los Angeles, California.

## PARTIES

5.    Plaintiff Michael J. Henry ("Plaintiff" or "Henry") is and, at all times relevant hereto, was a resident of the State of California residing in the city of Orange, California.

6.    Defendant Pro*Act, LLC ("Pro*Act") is a Limited Liability Company formed under the laws of the state of Delaware and doing business in the State of California.  Pro*Act is the leading distributor of fresh produce to the food service industry in the United States.  Pro*Act operates from its principal place of business

1   in Monterey, California and from a second office location in Dallas, Texas.

2        7.     Defendant Harvest Sensations, LLC ("Harvest Sensations") is a

3   wholly owned subsidiary of Pro*Act and is also a Limited Liability Company

4   formed under the laws of the state of Delaware and doing business in the State of

5   California. As a subsidiary of Pro*Act, Harvest Sensations is a specialty produce

6   supplier to food service and retail operations in North America. Harvest Sensations

7   operates from of two warehouse locations in Los Angeles, California and Miami,

8   Florida.

9

10              **JOINT EMPLOYER ALLEGATIONS**

11       8.     At all times relevant hereto, Harvest Sensations and Pro*Act both

12  maintained the practical ability to prevent the alleged violations stated herein,

13  including the authority to promulgate work rules, assign duties and responsibilities,

14  maintain control of employees' records, oversee the day-to-day supervision of

15  employees, administer payroll, maintain and/or modify employees' conditions of

16  employment, grant leaves of absence, provide reasonable accommodations, and

17  make determinations regarding the hiring and firing of employees.

18       9.     Neither Harvest Sensations nor Pro*Act may shield themselves from

19  liability by delegating some level of control to one Defendant. Accordingly,

20  Harvest Sensations and Pro*Act  are referred to herein collectively as "Defendants"

21  where appropriate.

22       10.    At all times mentioned herein, Defendants were agents, servants,

23  employees, successors, and/or assigns of each other. Defendants, at all times

24  mentioned herein, were acting within the course and scope of their authority as

25  such agents, servants, employees, successors, and/or assigns.

26       11.    At all times relevant hereto, Plaintiff was jointly employed by

27  Defendants in the State of California.

28

## GENERAL ALLEGATIONS

12.    In June 2006, Plaintiff Henry was employed as the Vice President of Harvest Sensations, LLC.  As Vice President, Henry's duties and responsibilities included general oversight of all aspects of Harvest Sensations' operations and performance of a wide variety of tasks as required.

13.    For six (6) years, from June 2006 to May 2012, Henry executed his duties and responsibilities as Vice President satisfactorily without issue.

14.    In May 2012, Henry informed Harvest Sensations that he would have to undergo a corrective operation to address a deteriorating back condition from which Henry was suffering.

15.    Thereafter in May 2012, Harvest Sensations reassigned Henry to spearhead two "Special Projects" in lieu of maintaining his regular duties and responsibilities as Vice President.  First, Harvest Sensations charged Henry with the responsibility of finding a larger warehouse facility for Harvest Sensations in Los Angeles.  Second, Harvest Sensations burdened Henry with overseeing the implementation of new computer software system entitled "Famous," which is an integrated accounting, inventory, and management software program used by agricultural enterprises to ensure the traceability of produce products "from field to fork."

16.    During the discussion informing Henry of his assignment to these "Special Projects," Harvest Sensations assured Henry that he would return to his day-to-day Vice President duties for the Los Angeles Warehouse when the Special Projects were completed.

17.    On or about June 1, 2012, Harvest Sensations notified the other employees at the Los Angeles facility that Henry had been assigned to Special Projects and was no longer to be copied on emails regarding day-to-day operations.

18.    Commencing in June 2012, Henry underwent a series of corrective operations to address his deteriorating back condition.  On June 5, 2012 and July

COMPLAINT FOR DAMAGES

12, 2012, respectively, Henry had two cervical spine surgeries. On September 25, 2012, Henry had a 7-level thoracic fusion, and a clean-up procedure performed on October 10, 2012.

19.    Following each of his first two surgeries on June 5, 2012 and July 12, 2012, respectively, Henry returned to work at Harvest Sensations after limited time off of work and, while on driving restrictions during his recovery, would often work from home unless he was required to be at Harvest Sensations' Los Angeles facility for a training session.

20.    On days when Henry was needed to be at the Los Angeles facility for training sessions, a family member would drive Henry to and from the facility. Otherwise, Henry worked from his desk at home.

21.    With respect to the more extensive 7-level thoracic fusion, Henry provided notice to Defendants on September 17, 2012 and went out on FMLA leave effective September 25, 2012. Given the twelve (12) weeks of leave afforded under the FMLA, Henry was scheduled to return to work on or before December 18, 2012.

22.    On November 15, 2012, Mary McFarland ("McFarland"), Human Resources Manager for Pro*Act, notified Henry by letter that his coverage under the FMLA ended on December 11, 2012, only eleven (11) weeks after Henry went out on leave on September 25, 2012.

23.    On December 12, 2012, Henry's treating physician, Gregory D. Carlson, informed Harvest Sensations that Henry could return to work from home on December 17, 2012. Dr. Carlson further informed Harvest Sensations that Henry would be reassessed in January 2013 for a full return to work at the Los Angeles facility.

24.    Chris Coffman ("Coffman"), President of Harvest Sensations, responded to the note from Henry's treating physician by letter the next day, December 13, 2012. In the letter, Coffman asserted that Dr. Carlson failed to

respond to Harvest Sensations by December 11, 2012, which was the purported
expiration of Henry's FMLA leave as set forth in McFarland's November 15, 2012
letter.

25.     Coffman stated in the December 13, 2012 letter that the proposed
return to work date of December 17, 2012 was not feasible, that Henry could not
resume his prior duties, and that there was no reasonable accommodation that could
be granted to Henry.  Notwithstanding these assertions, Coffman invited Henry "to
suggest what you think you might be able to do within the company."

26.     Coffman further stated in the December 13, 2012 letter that Henry's
medical coverage would be discontinued after December 31, 2012 and that Henry
would be required to apply for medical coverage under the Consolidated Omnibus
Budget Reconciliation Act ("COBRA") if he wanted to continue his health
coverage at his own expense.

27.     By email dated December 17, 2012, Henry informed Coffman that,
based upon a start date of September 25, 2012, his FMLA leave did not expire until
the following day, December 18, 2012.

28.     Coffman responded to Henry's email the same day and acknowledged
the miscalculation regarding Henry's FMLA leave.  Notwithstanding Harvest
Sensations' mistake, Coffman asserted that "all other aspects of the [December 13,
2012] letter remain intact."

29.     On December 24, 2012, Coffman again informed Henry by letter that
"the Company does not currently have a position available based on your
physician's work restrictions."

30.     Henry responded to Coffman by email on December 27, 2012 and
informed Coffman that Pro*Act and Harvest Sensations had many employees
serving in a wide variety of roles who performed their job functions remotely, and
that he could perform a number of duties and responsibilities remotely until he was
cleared to commute to Los Angeles in January.  Henry also noted that the company

1  would be in the best position to identify a position for him.

2      31.   Henry followed up with Coffman again on January 9, 2013 and
3  indicated that he had not received any response from Harvest Sensations to his
4  December 27, 2012 email.

5      32.   Coffman responded that day and indicated that Harvest Sensations
6  would get back to Henry "in a day or two."

7      33.   The following day, Henry received a letter from Coffman terminating
8  his employment effective January 9, 2013, the same date of Henry's most recent
9  attempt to discuss a potential reasonable accommodation with Coffman.  In the
10 letter, Harvest Sensations alleged that Henry failed to engage in the interactive
11 process.

12     34.   Henry received no further response to his emails to Coffman and
13 Harvest Sensations regarding potential reasonable accommodation.

14     35.   At no time did Defendants reinstate Henry to the position of Vice
15 President, reassign him to Special Projects, or otherwise provide Henry with an
16 equivalent position of employment.

17     36.   On September 25, 2013, Plaintiff Henry filed a complaint of
18 discrimination with the Department of Fair Employment and Housing ("DFEH").
19 On September 25, 2103 Henry received a Right-To-Sue-Notice from the DFEH.

20
21        **FIRST CLAIM FOR RELIEF**
          (FMLA Interference Against
22          Defendants, Each of Them)

23     37.   Plaintiff realleges and incorporates by reference, as though fully set
24 forth herein, paragraphs 1 through 36, inclusive.

25     38.   At all times relevant hereto, Section 2615 of Title 29 of the United
26 States Code was in full force and effect and was binding upon Defendants.  Section
27 2615(a)(1) prohibits employers from interfering with, restraining, or otherwise
28 denying the exercise of or the attempt to exercise, any right provided under the

1  FMLA.

2      39.    As interpreted by the United States Court of Appeals for the Ninth

3  Circuit, Section 2615(a)(1) applies to employees who take FMLA leave and, as a

4  consequence, are subjected to discharge by the employer. *Xin Liu v. Amway Corp.*,

5  347 F.3d 1125, 1133 n.7 (9th Cir. 2003); *Bachelder v. America West Airlines, Inc.*,

6  259 F.3d 1112, 1124 (9th Cir. 2001).

7      40.    At all times relevant hereto, Defendants maintained a workforce of at

8  least 80 employees at Harvest Sensations' warehouse facility in Los Angeles,

9  California where Henry worked.

10      41.    As alleged in paragraphs 12 and 13, inclusive, Henry had been

11  employed by Defendants and provided more than 1,250 hours service to

12  Defendants from Harvest Sensations' warehouse facility in Los Angeles, California

13  in the 12-month period immediately preceding September 25, 2012.

14      42.    As alleged in paragraph 21, inclusive, Henry provided reasonably

15  sufficient notice to Defendants of his intent to take leave pursuant to the FMLA.

16      43.    As alleged in paragraphs 33 and 35, inclusive, Defendants denied

17  Henry FMLA benefits to which he was entitled when Defendants failed to reinstate

18  his employment on or about December 18, 2012 and terminated him effective

19  January 9, 2013.

20      44.    The conduct alleged in paragraphs 12 through 36 and 38 through 43,

21  inclusive, was a substantial factor in causing damage and injury to Plaintiff in an

22  amount in excess of the jurisdictional requirement of this Court.

23                        **SECOND CLAIM FOR RELIEF**
24                       (Disability Discrimination Against
                             Defendants, and Each of Them)
25

26      45.    Plaintiff realleges and incorporates by reference, as though fully set

27  forth herein, paragraphs 1 through 36, inclusive.

28

46.   At all times herein mentioned, Government Code section 12940 *et seq.* was in full force and effect and was binding upon Defendants.  Section 12940(a) requires Defendants to refrain from discriminating against an employee on the basis of a physical disability.

47.   As alleged in paragraphs 14 and 18, inclusive, Plaintiff suffered from a physical disability within the meaning of section 12940 *et seq.*

48.   At all times relevant hereto, Plaintiff was qualified to satisfactorily perform the essential duties of his job as the Vice President of Harvest Sensations.

49.   As alleged in paragraph 15, inclusive, Plaintiff suffered adverse employment action when Defendants removed Plaintiff's regular duties and responsibilities as Vice President and assigned him to "Special Projects."

50.   As alleged in paragraph 33, inclusive, Plaintiff suffered an adverse employment action when Defendants terminated Plaintiff.

51.   The conduct alleged in paragraphs 12 through 36, inclusive, constitutes discrimination on the basis of Plaintiff's physical disability.

52.   The conduct alleged in paragraphs 12 through 36 and 46 through 51, inclusive, was a substantial factor in causing damage and injury to Plaintiff in an amount in excess of the jurisdictional requirement of this Court.

53.   Defendants, and each of them, have acted for the purpose of causing Plaintiff to suffer financial loss and are guilty of oppression and malice, justifying an award of exemplary damages.

### THIRD CLAIM FOR RELIEF
(Failure to Accommodate Against
Defendants, and Each of Them)

54.   Plaintiff realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 36, inclusive.

55.   At all times herein mentioned, Government Code section 12940 *et seq.* was in full force and effect and was binding upon Defendants.  Section 12940(m)

COMPLAINT FOR DAMAGES

1  requires Defendants to make reasonable accommodation for the known disabilities
2  of employees in order to enable them to perform a position's essential functions.

3      56.    As alleged in paragraphs 14, 18, and 23 through 34, inclusive,
4  Defendants were aware of Plaintiff's physical disability and failed to reasonably
5  accommodate Plaintiff.

6      57.    At all times relevant hereto, Plaintiff was competent to perform and
7  could have performed the essential job functions of Vice President with reasonable
8  accommodation.

9      58.    The conduct alleged in paragraphs 12 through 36 and 55 through 57,
10 inclusive, was a substantial factor in causing damage and injury to Plaintiff in an
11 amount in excess of the jurisdictional requirement of this Court.

12     59.    Defendants, and each of them, have acted for the purpose of causing
13 Plaintiff to suffer financial loss and are guilty of oppression and malice, justifying
14 an award of exemplary damages.

15                    **FOURTH CLAIM FOR RELIEF**
16              (Failure to Engage in the Interactive Process
                    Against Defendants, and Each of Them)
17

18     60.    Plaintiff realleges and incorporates by reference, as though fully set
19 forth herein, paragraphs 1 through 36, inclusive.

20     61.    At all times herein mentioned, Government Code section 12940 *et seq.*
21 was in full force and effect and was binding upon Defendants. Section 12940(n)
22 requires Defendants to engage in a timely, good faith interactive process to
23 determine effective reasonable accommodations for employees with disabilities.

24     62.    As alleged in paragraphs 14, 18, and 23 through 34, inclusive,
25 Defendants were aware of Plaintiff's physical disability and failed to take steps to
26 engage in an interactive process to determine an effective reasonable
27 accommodation for Plaintiff.

28

COMPLAINT FOR DAMAGES

63.    The conduct alleged in paragraphs 12 through 36 and 61 to 62, inclusive, was a substantial factor in causing damage and injury to Plaintiff in an amount in excess of the jurisdictional requirement of this Court.

64.    Defendants, and each of them, have acted for the purpose of causing Plaintiff to suffer financial loss and are guilty of oppression and malice, justifying an award of exemplary damages.

## FIFTH CLAIM FOR RELIEF
### (Age Discrimination Against Defendants, and Each of Them)

65.    Plaintiff realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 36, inclusive.

66.    At all times relevant hereto, Government Code section 12940 *et seq.* was in full force and effect and was binding upon Defendants.  Section 12940(a) requires Defendants to refrain from discriminating against an employee on the basis of age.

67.    At all times herein mentioned, Plaintiff was over 60 years of age.

68.    At all times relevant hereto, Plaintiff was qualified to perform and could satisfactorily perform the essential job duties of his job as the Vice President of Harvest Sensations.

69.    As alleged in paragraph 15, inclusive, Plaintiff suffered adverse employment action when Defendants removed Plaintiff's regular duties and responsibilities as Vice President and assigned him to "Special Projects."

70.    As alleged in paragraph 33, inclusive, Plaintiff suffered an adverse employment action when Defendants terminated Plaintiff.

71.    During Plaintiff's leave of absence and continuing after Plaintiff's termination, Defendants reassigned Plaintiff's duties and responsibilities, both as to his position as Vice President and with respect to the Special Projects, to other employees who were significantly younger than Plaintiff.

COMPLAINT FOR DAMAGES

72.     The conduct alleged in paragraphs 12 through 36 and 66 through 71, inclusive, was a substantial factor in causing damage and injury to Plaintiff in an amount in excess of the jurisdictional requirement of this Court.

73.     Defendants, and each of them, have acted for the purpose of causing Plaintiff to suffer financial loss and are guilty of oppression and malice, justifying an award of exemplary damages.

### SIXTH CLAIM FOR RELIEF
(Wrongful Termination in Violation of Public Policy
Against Defendants, and Each of Them)

74.     Plaintiff realleges and incorporates by reference, as though fully set forth herein, paragraphs 1 through 36, inclusive.

75.     The public policy of the State of California is codified in Government Code section 12940 *et seq.* as well as through the provisions of the FMLA, which represents the federal counterpart to the California Family Rights Act ("CFRA"). All of the aforementioned statues were in full force and effect and were binding upon Defendants at all times relevant hereto.

76.     As alleged in paragraphs 12 through 36, inclusive, Plaintiff was an employee of Defendants and suffered an adverse employment action when Defendants terminated Plaintiff.

77.     The conduct alleged in paragraphs 12 through 73, inclusive, constitutes wrongful termination in violation of public policy.

78.     Defendant's termination of Plaintiff was a substantial factor in causing damage and injury to Plaintiff in an amount in excess of the jurisdictional requirement of this Court.

79.     Defendants, and each of them, have acted for the purpose of causing Plaintiff to suffer financial loss and are guilty of oppression and malice, justifying an award of exemplary damages.

COMPLAINT FOR DAMAGES

WHEREFORE, Plaintiff MICHAEL J. HENRY prays for judgment against Defendants, and each of them, as follows:

**As to the First Claim for Relief:**

1.     For lost wages, employment benefits, and other compensation pursuant to 29 U.S.C. § 2617(a)(1)(A)(i)(I);

2.     For prejudgment interest pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii);

3.     For liquidated damages pursuant to pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii);

4.     For reasonable attorney's fee, reasonable expert witness fees, and other costs of the action pursuant to 29 U.S.C. § 2617(a)(3);

**As to the Second Claim for Relief:**

5.     For general damages according to proof;

6.     For special damages for lost earnings according to proof;

7.     For attorney's fees pursuant to Government Code section 12965(b) and/or any other applicable provision of law;

8.     For prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for prejudgement interest;

9.     For punitive damages according to proof;

**As to the Third Claim for Relief:**

10.     For general damages according to proof;

11.     For special damages for lost earnings according to proof;

12.     For attorney's fees pursuant to Government Code section 12965(b) and/or any other applicable provision of law;

13.     For prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for prejudgement interest;

14.     For punitive damages according to proof;

**As to the Fourth Claim for Relief:**

15.     For general damages according to proof;

COMPLAINT FOR DAMAGES

16.     For special damages for lost earnings according to proof;

17.     For attorney's fees pursuant to Government Code section 12965(b) and/or any other applicable provision of law;

18.     For prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for prejudgement interest;

19.     For punitive damages according to proof;

**As to the Fifth Claim for Relief:**

20.     For general damages according to proof;

21.     For special damages for lost earnings according to proof;

22.     For attorney's fees pursuant to Government Code section 12965(b) and/or any other applicable provision of law;

23.     For prejudgment interest pursuant to Civil Code section 3287 and/or any other provision of law providing for prejudgement interest;

24.     For punitive damages according to proof;

**As to the Sixth Claim for Relief:**

25.     For general damages according to proof;

26.     For special damages for lost earnings according to proof;

27.     For punitive damages according to proof;

///

///

///

COMPLAINT FOR DAMAGES

**As to All Claims for Relief:**

    28.    For cost of suit incurred herein;

    29.    For attorney's fees as provided by law;

    30.    For prejudgment interest as provided by law; and

    31.    For such other and further relief as the Court may deem just and proper.


**DATED:**  November 26, 2013          **POSNER & ROSEN LLP**


By:_____
          HOWARD Z. ROSEN
          JASON C. MARSILI
          BRIANNA M. PRIMOZIC
          Attorneys for Plaintiff
          MICHAEL J. HENRY

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

2       Plaintiff MICHAEL J. HENRY hereby demands a jury trial on all claims for

3 relief.

4

5

6 **DATED:** November 26, 2013                 **POSNER & ROSEN LLP**

7

8                             By:_____

9                                HOWARD Z. ROSEN

                               JASON C. MARSILI

10                                BRIANNA M. PRIMOZIC

                               Attorneys for Plaintiff

11                                MICHAEL J. HENRY

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEMAND FOR JURY TRIAL